May it please the Court, Mr. Bradford. My name is Adam Barney, with Klein, Williams, Wright, Johnson & Oldfather in Omaha, Nebraska. We represent the appellant in this matter, Prospect Funding Holdings. This is an appeal from the District Court's order vacating arbitration awards that were entered against the applicants, Ronald J. Palagi and his law firm. Boiled down, there are three issues in this appeal. First, whether the District Court had subject matter jurisdiction over the application that was filed. Second, whether the District Court had personal jurisdiction over Prospect Funding Holdings. Third, whether the District Court erred in failing to give preclusive effect to the New York State Court decision confirming the arbitration awards. I'd like to address each in order and start first with subject matter jurisdiction and the Court's question regarding the diversity of citizenship allegations. As the panel saw from our supplemental filing, we believe that the lack of citizenship allegations is fatal to the application and the jurisdiction of the District Court. Now, can I ask you one question about that? As I reviewed the District Court file, I think there was allegations of diversity as to Ronald L. Palagi, is that how you pronounce it? Palagi. Palagi, P.C. And it may be that Palagi, P.C. is properly before the Court. I think the problem becomes with the fact that you later named him individually, and there's no allegation of his citizenship as an individual, as I read the pleadings. Do I understand that Mr. Palagi is deceased and the P.C. is no longer in existence? I mean, do we have to decide as to the P.C., but not as to Palagi personally, or where does that leave us? Yes, so Mr. Palagi is deceased. He passed away shortly after the District Court's opinion. I think if you're looking at diversity allegations, you're looking at was there diversity at the time that the application was filed. Now, the procedure of this matter, the unusual posture that we have in front of ourselves, lends to some interesting questions, Your Honor. When we filed an application to confirm arbitration awards five years ago, there were allegations of diversity in that application to confirm. That matter was then finalized and done. Judgment was entered. Case was administratively closed. Judgment was entered against whom in that case, just so I'm following you? Judgment was entered vacating the initial arbitration awards. And the initial arbitration awards were against the P.C.? They were against the P.C. and Mr. Shea Stubblefield. Okay, thank you. And there was diversity over that. It was pled and it was proper. Then, 18 months later, a new application was initiated, not by us, but by the Appellees, Mr. Palagi's firm and Mr. Palagi individually. That had no allegations of diversity there. I would tell you, I'm confident saying that at that time there was diversity between my client and Mr. Palagi and Mr. Palagi's firm. The question that I can't give you with any, or the answer I can't give you with any confidence is, what was Shea Stubblefield's citizenship at the time? What was Shea Stubblefield's status in this case, given the unusual way that this was filed? Well, the arbitration award wasn't against him, though, was it? It was not. So he was essentially dropped. Well, he was dropped from our prosecution of him through the arbitration, correct. But the action that was filed by the Appellees here, that action was made in a case that involved Mr. Stubblefield. And that's the whole posture of this. And that's why, yes, I think there's a lack of allegations here on diversity. And the Appellees suggest maybe that could be fixed by remanding this back for further briefing and a motion to amend the complaint. But we do agree with the Appellees that a remand here would be improper. We think that for a number of reasons, but primarily it doesn't fix the jurisdictional issues that exist. Because they filed an application in a closed case with different arbitration proceedings, different arbitration awards, different arbitrators, and, in fact, as you point out, different parties, it was not a permissible filing in any sense, not allowed by the rules. Is that necessarily jurisdictional, what you just walked through, or is that just more of a series of procedural errors? We believe it's jurisdictional. We believe the district court has an obligation to determine whether or not it has jurisdiction over an application or a complaint that's filed before then. And if a party were to go in and just simply file a complaint in a random case, does the district court have jurisdiction over that random case that had been closed for a year, two, ten years? Of course not. It's not permitted by the rules, by those passed by Congress, to say, yes, the court has jurisdiction to take and look at that application or that complaint. So, yes, we do believe it's jurisdictional, and that's one of the reasons we think the district court got to this erroneous conclusion. The district court approached it as a procedural matter, and we don't think that's proper. Jurisdiction's not procedure. It doesn't have the flexibility that procedure has. And if you look at the district court's opinion on this, they approach it in the question of its own jurisdiction in the negative. The district court asks itself, quote, well, why not? Why can't we rule on this? But that's not how jurisdiction works. The federal courts are courts of limited jurisdiction. They have to only have that jurisdiction that's conferred upon them by Congress. And it's simply not the case. And if you ask yourself the proper question, does the district court have jurisdiction to rule on an application related to post-judgment arbitration awards, different proceedings with different arbitrators with different parties in a long-ago closed case, the answer to that question is obvious. No, the court did not. And that conclusion really is only reinforced by Badgerow and Morgan v. Sundance from the Supreme Court's last term. Badgerow really looked and focused on the court's jurisdiction over motions and applications to confirm and to vacate and said, look through jurisdictions not proper. You really have to look just at the application itself, the district court, and its procedural and proper procedural analysis of this did look through the application and said, well, I'm going to maybe allow this even though it's really weird and I don't see any reason why because I look through the application and I see that it's kind of related to the old case. But Badgerow confirmed you can't do that. Badgerow also emphasized some other language in the opinion. Jurisdiction is not based on, quote, what makes best sense assertions resting on the view that the FAA contains no such clear directive limiting jurisdiction. That's exactly what the district court did here. Well, it makes sense. The parties are here anyways. And there's really nothing in the FAA limiting jurisdiction over this application. That was there. That's what the district court did. Procedurally, what did you do in the district court here? I think, in other words, did you file a motion to dismiss or a motion for summary judgment or something to highlight these procedural or jurisdictional defects, however you look at those? So the application, again, was filed in a closed case. And by virtue of me being counsel of record for the old case, I got a CMECF email for it. I was not counsel for prospect funding at the time. My representation had ended when the case had ended. We didn't respond. Prospect funding did not file a response to it. It had never been served with anything. And we got notification then from the court in an order to show cause as to why you haven't responded to this. We responded back to that order to show cause with two filings. First, we moved to dismiss for lack of subject matter jurisdiction, as well as lack of personal jurisdiction for failure to serve. We also filed a motion to defer our obligation to respond on the merits of the order to show cause until the jurisdictional issues have been addressed. And the court granted that motion and said, prospect funding, you don't have to address the merits until after we've ruled on the jurisdiction. Unfortunately, that never happened, and the district court ultimately entered an opinion on the merits of the case without even letting us respond on the merits, which, again, we think led to further errors as to the status of Pelagyi as a party to this contract. So, Mr. Birney, assuming we get past that issue, what document can you point to that makes Mr. Pelagyi or his firm parties to the litigation funding agreement? Sure. There's two or three documents that are involved in that transaction, the purchase agreement itself and then that letter of direction that Mr. Pelagyi acknowledges and agrees. And that agreement is a tripartite transaction. It is an agreement where prospect funding agrees to pay money to Mr. Stubblefield. Mr. Stubblefield agrees if he obtains a favorable settlement or judgment in his underlying personal injury suit that he'll pay some money to prospect funding back. And Mr. Pelagyi agreed in that agreement to handle and safeguard that money in a certain manner that protected prospect funding's interests. I've read those documents, and I guess I'm not seeing the language that makes them a party. There's no language. And one thing that the district court focused on was, well, it doesn't say he's a party. It doesn't say he's a party. But that's not how contractual parties are determined. You don't look necessarily to how the parties or how they're named there. You look to what their obligations are. And Mr. Pelagyi absolutely had obligations. The acknowledgment that he signed isn't just an acknowledgment. It doesn't just say, I acknowledge this exists. It was written more like a notary. Well, the way it was written may be. I don't know if we're willing to concede that. But if you look at what is actually stated there, he says, I agree this, I agree this, I agree that I'll act in this manner. That's an agreement. That's a contract. Those are obligations. And the contract's clear. This agreement never would have happened if Mr. Pelagyi hadn't made those agreements, if he had not agreed to safeguard the money in his trust account, agreed to not pay out the money of his trust account to Mr. Stubblefield until prospect funding was paid. So if you look at it as some of these other opinions that are cited in the Apolis brief, did Mr. Pelagyi make an affirmative obligation to prospect funding or did prospect funding make an affirmative obligation to him? That's not the proper way to look at this. Mr. Pelagyi made obligations. He had obligations. And that's what the stuff of a party is. That's how one becomes a party to a contract. Well, one of the problems, it seems to me, is that you have a New York appellate court decision that deals with an agreement with prospect funding that, as far as I understand, is indistinguishable from the one we have in front of us, and they say that the attorney's not a party. So we have to just basically say that decision's wrong? Well, one, it's obviously not a binding decision on this court. Two, I obviously wasn't counsel to that. I don't know how the issues were presented in that case. But the court doesn't address this idea that it's a tripartite transaction in that decision. And I think if you look and you dig into this contract and the agreement, you see that every one of these three parties had obligations. And it says in that contract that prospect funding is relying on this acknowledgement, which is really an agreement. And so I think when you look at the agreement, you can see that the tripartite agreement exists, and they've been bound by the arbitration clause. It seems to me the problem is that the letter of direction, the irrevocable letter of direction, is between Palagi and his client, Stubberfield, not between Palagi and your client. I think that's where you say it's a tripartite, but it doesn't say it's tripartite. It says it's between the two of them. Well, one, you look at all the agreements, it's one transaction as a whole. And the letter of direction does say prospect funding's relied upon this, and prospect funding has executed that and did execute that. And a tripartite transaction doesn't necessarily have to spell that out. If I wanted to enter in an agreement with Mr. Bradford, and I like his tie, and I want his tie, but I don't have anything to give to Mr. Bradford. He doesn't want any money. He just wants a vacation stay that this third party has. That's what he wants for his tie. And if this person's willing to have me pay them $200 for that, the obligations are not necessarily direct. I don't have any direct obligations to Mr. Bradford, but we're still all parties to the same agreement. And that's the stuff of a tripartite transaction. So I see that I'm out of time. I'll give you one minute for rebuttal. Thank you, Your Honors. Mr. Bradford. Thank you. If it pleases the Court, my name's Woody Bradford. I'm Mr. Barney. I represent Ronald J. Palaci and now the estate of Ronald J. Palaci, at least for the purposes of this hearing, and his firm. And as I think you are aware, also Chase Doublefield, who has an interest in this case. I don't know exactly where to begin, but on the jurisdictional issue, I understand the question that this Court presented to us just before we arrived. I understand that the application that I drafted, frankly, did not identify the diversity of citizenship of Ron Palaci and the firm. However, I do believe the Court in the previous case, and this is really what is the elephant in the room. There's two elephants in this room. One is that the previous case was decided by the district court on the basis that there was no jurisdiction for Palaci's firm and or Stubblefield. What happened then was a new case was filed in the state of New York, and that case did not include Stubblefield. So they took that agreement, as far as I'm arguing, completely away. It was a new theory of the case, which is the tri-party theory, and they went for the deep pocket. The issue of the Badgerill case in this points out a really significant thing. I suggest to this Court that prospect funding had an opportunity to go under Rule 4 because Palaci, neither Stubblefield, the party in interest, was not going to participate in the arbitration. But if they went under that provision, they would have had to afford due process to Stubblefield, as provided in Rule 4. They didn't do that, and they didn't do it for a reason. We're talking about a case where they paid out $6,000 and are now asking for $200,000, and it is that bizarre. So they went to New York, get Stubblefield out of here, and then concentrate on Ron Palaci. Because if we're looking for a deep pocket, it's going to be Ron Palaci, they assumed. In any event, so they filed in New York. They did not get jurisdiction. They filed against two parties that were not party to the agreement, particularly Palaci. And then, here's where I probably made a mistake. I got it, and I was on the first case. I knew about the first case. I knew that it had all been litigated. Everybody knew the facts. So I thought, where do I go with this? I can't, you know, they did have jurisdiction in New York. Where can I find some jurisdiction? So I filed it in the district court because of two or three different things. One is, it's the same case. Exactly the same case. It's the same contract. It's the same parties, except they've added two parties that, frankly, were not party to the agreement, but they're alleging that they were party to the agreement. And I think it was important that the court at least consider those facts, and it did. Maybe the court was novel in its idea, but I still like it. It basically said, okay, I get that they avoided Rule 4. I get that. I get that. He understood. I get that. So I'm going to look at Rule 10 and 11, and I'm going to find a way to accept this. And I think what the court did is said, it's a motion. And the reason it's a motion is because he treated it as a motion to dismiss because that's what it was. It was like a motion to dismiss, and it's clear he did it, again, because there was no jurisdiction over Pelagi or his firm in the New York case. There's no question about that. And so he determined that, therefore, this was a motion. And once it was a motion, he escaped having to, in effect, identify or he went to the look-through. Because it was available to him, he thought, because it was a carryover. Or he got around, I guess you'd say, the look-through. That's what I think happened in this case as to whether or not this case could be sent back. I would like to see it sent back for a number of reasons. They have nothing to do with your consideration. But I feel that the idea that we didn't include Ron Pelagi and the firm in our application, I don't think that has enough weight. Because they were, at least the firm, this court had jurisdiction from the very beginning. I guess that's my pitch. All right. Thank you. Thank you for the additional time. I appreciate that. This application was not a motion. It wasn't a motion to dismiss. It's an application. It's a new action. And Badgerow has emphasized that. This is a new proceeding. And I can't harp on that any harder. This is something new. This is conduct that occurred after the judgment had been entered in this case. So we don't believe it's a motion. It's to be treated as a motion. And both Badgerow and Morgan addressed what that means. But in the end, if the court somehow gets around those issues, in this acknowledgment, Mr. Pelagi expressly agrees that I will honor my client's irrevocable letter of direction assignment, consensual lien, and security interest subordinate to attorney's fees and reasonable expenses as per instructions above. He agrees that the agreement's going to be governed by arbitration. He makes affirmative agreements and obligations. He's a part of this contract, bound by the arbitration provision. Issues of arbitrability are left to the arbitrator. And we would ask that this court dismiss the action and allow the New York case judgment to stand. Thank you. Thank you, Mr. Barney and Mr. Bradford. We appreciate your arguments. And the case is submitted. Thank you.